**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA RIVERA,<br><br>       Plaintiff,<br><br>  - against -<br><br>170 KINGSBRIDGE PISTILLI LLC, PISTILLI REALTY GROUP and ANTHONY PISTILLI,<br><br>       Defendants | 20cv01577 (JGK)(BCM)<br><br>**STIPULATION OF SETTLEMENT**<br>**AND ORDER** |

   **WHEREAS**, Plaintiff LISA RIVERA and Defendants 170 KINGSBRIDGE PISTILLI

LLC, PISTILLI REALTY GROUP and ANTHONY PISTILLI, through their undersigned

counsel, stipulate and agree as follows:

   1.  This action is hereby dismissed with prejudice, pursuant to the terms of the

Settlement Agreement and Order signed by the Court on _____1/5_____ , 2022.

   2.  The Court shall retain jurisdiction over this action for the sole purpose of

enforcing compliance with the terms of the Settlement Agreement, and a determination of

Plaintiff's attorney's fees and costs, if necessary. Settlement Agreement is annexed hereto as

**Exhibit 1**.

   3.  A facsimile or scanned copy of this stipulation will be considered the same as an

original and may be filed with the court electronically or by facsimile transmission.

Dated: _____1/5_____ , 2022

SIGNATURES ON NEXT PAGE

1

LAW OFFICES OF JAMES E. BAHAMONDE, PC

James E. Bahamonde, Esq.
2501 Jody Court
North Bellmore, NY 11710
Tel: (646) 290-8258
Fax: (646) 435-4376
E-mail: james@civilrightsny.com

*Attorney for Plaintiff*

MELTZER, LIPPE, GOLDSTEIN &
BREITSTONE, LLP

Robert S. Plosky, Esq.
190 Willis Avenue
Mineola, NY 11501
Tel: 516-747-0300 Ext. 141
E-mail: RPlosky@meltzerlippe.com

*Attorney for Defendants*

The Clerk is directed
to close this case.

SO ordered.

1/5/22   U.S.D.J.

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA RIVERA, | 20cv01577 (JGK)(BCM) |
| Plaintiff, | **SETTLEMENT AGREEMENT** |
| - against - | |
| 170 KINGSBRIDGE PISTILLI LLC, PISTILLI REALTY GROUP, and ANTHONY PISTILLI, | |
| Defendants. | |

This Settlement Agreement (the "Settlement Agreement" or the "Agreement") is entered into by and between Plaintiff LISA RIVERA (referred to as "Plaintiff"), and Defendants 170 KINGSBRIDGE PISTILLI LLC, PISTILLI REALTY GROUP and ANTHONY PISTILLI (together referred to as "Defendants" or Plaintiff and Defendants both collectively referred to as the "Parties");

**WHEREAS,** Plaintiff filed this action against Defendants on February 21, 2020 alleging housing discrimination in violation of Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the New York State Human Rights Law, New York Executive Law § 296 *et seq.*; and the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq.* pursuant to which Plaintiff sought declaratory and injunctive relief, damages, attorneys' fees, and costs;

**WHEREAS,** Defendants have denied and/or do hereby deny, the allegations of wrongdoing and liability against them in the above-captioned action (the "Action"), including in the Amended Complaint filed July 20, 2020 (ECF Document No. 20) (the "Amended Complaint" or the "Complaint"), and by entering into this Agreement do not intend to admit, and do not admit, the same;

**WHEREAS,** the Parties desire to voluntarily resolve the claims asserted in the Action as a compromise to avoid protracted and expensive litigation, and agree the terms of this Settlement Agreement reflect a full and fair resolution of their disputes;

**WHEREAS,** Defendants maintain they have complied and will continue to comply with the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the New York State Human Rights Law, New York Executive Law § 296 *et seq.*; and the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq.*;

**WHEREAS,** subject to the terms of this CONFIDENTIAL Agreement, the Parties have agreed to settle the Action and resolve any and all disputes among them;

**WHEREAS,** the Parties respectfully request that the Court approve and enter the Settlement Agreement, and retain jurisdiction to enforce its terms;

1

WHEREAS, the Parties acknowledge that all of the "WHEREAS" clauses set forth above are incorporated as material parts of this Agreement, including this clause;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the parties that all claims will be compromised, settled, released, and dismissed upon and subject to the terms of this Agreement, as follows:

## SECTION I
## DEFINITIONS

1.    As used in this Agreement, the following terms will have the following meaning:

    a.    "Plaintiff" means Lisa Rivera (as defined above).

    b.    "Defendants" means collectively 170 Kingsbridge Pistilli LLC, Pistilli Realty Group, and Anthony Pistilli (as defined above).

    c.    "Parties" means collectively Plaintiff and Defendants (as defined above).

    d.    "Pistilli Entity Defendants" means collectively 170 Kingsbridge Pistilli LLC and Pistilli Realty Group, but not Anthony Pistilli.

    e.    "Access Laws," "Access," "Accessibility," and "Accessible" mean and refer to conditions that comply with the relevant and applicable standards set forth in federal and state disability rights laws, which may include, for example, ANSI A117.1-03, as identified within the safe harbor regulations of the Fair Housing Act; New York State Human Rights Law; ADA Standards for Accessible Design, commonly referred to as the Americans with Disabilities Act Accessibility Guidelines, and New York State building code.

    f.    "Action" means *Rivera v. 170 Kingsbridge Pistilli LLC, et al.* 20cv01577 (JGK)(BCM), pending in the United States District Court for the Southern District of New York.

    g.    "Architect" means and refers to the licensed architect retained by Defendants pursuant to Section IV hereunder. *

    h.    "Common Area(s)" means and refers to those areas of the Multifamily Apartment Building (defined below) provided for the common use of all tenants, occupants and invitees.

    i.    "Contractor" means and refers to the licensed and insured general contractor that shall be retained to modify the Common Areas.

    j.    "Effective Date" means the date this Agreement is signed by all Parties.

    k.    "Ground-Floor Apartment" means apartment 1G located within the Multifamily Apartment Building (defined below).

\* <u>Architect</u>: Gerald J. Caliendo Architects
138-72 Queens Blvd.
Briarwood, NY 11435

2

l.   "Modifications" mean the accessibility modifications that will be made to the Common Area and Third-Floor Apartment, as set forth in Exhibits 1 and 2.

m.   "Multifamily Apartment Building" means the multifamily apartment building located at 170 W. Kingsbridge Road, Bronx, NY 10463.

n.   "Scope Of Work" are the general accessibility alterations that will be made to the Third-Floor Apartment, as set forth in Exhibit 2.

o.   "Third-Floor Apartment" means apartment 3B located within the Multifamily Apartment Building.

## SECTION II
## GENERAL AGREEMENT

2.   The Parties acknowledge they have been afforded an opportunity to consider the terms and conditions of this Agreement, they have read and understood the terms and conditions herein, and they have been advised to obtain counsel and have been provided with the opportunity to consult with their respective counsel prior to their execution of this Agreement.

3.   This Settlement Agreement constitutes the entire agreement between the Parties hereto with respect to the matters set forth herein and supersedes in its entirety any and all agreements or communications, whether written or oral, previously made in connection with the matters herein.

4.   Any agreement to amend or modify the terms and conditions of this Settlement Agreement must be in writing and executed by the Parties hereto.

5.   This Settlement Agreement shall be binding upon all Parties and their respective successors and/or assigns. The Parties shall perform their obligations under the Settlement Agreement in good faith.

6.   The Pistilli Entity Defendants stipulate and represent that they are the owner and/or operator of the Multifamily Apartment Building and have the authority to execute and deliver this Settlement Agreement and to perform its obligations hereunder. Plaintiff represents and warrants she has not sold, assigned, transferred, conveyed or otherwise disposed of or encumbered any of the claims, demands, obligations or causes of action referred to in this Settlement Agreement.

7.   All obligations under this Settlement Agreement, unless otherwise specified, will commence on the Effective Date (as previously defined herein) and shall remain in effect for a period of five (5) years from the Effective Date.

## SECTION III
## TERM AND SCOPE OF AGREEMENT

8.   Defendants agree to renew Ms. Rivera's two-year lease within two weeks of the Effective Date, according to the terms and conditions set forth in said lease.

3

9.      Defendants agree to eliminate the carpet requirement in the standard lease for the Third-Floor Apartment.

10.      Defendants agree to timely respond to Plaintiff's written request to repair the functional aspects of the Third-Floor Apartment such as plumbing, appliances, electricity, heating, windows, doors, and holes in ceiling and walls. Defendants will use their reasonable best efforts to respond to Plaintiff's plumbing and heating repair requests within 24 hours. Defendants will use their reasonable best efforts to respond to Plaintiff's other repair requests within 48 hours. "Respond" as used in this paragraph means to acknowledge receipt of the request and begin the process of evaluating and implementing a repair solution. After acknowledging receipt, Defendants may request additional information from Plaintiff, before implementing actions to make the repairs.

## SECTION IV
## ACCESSIBILITY MODIFICATIONS

### A.      Expert Fees and Costs

11.      Defendants shall retain a licensed architect (previously defined as the "Architect") to inspect, examine and report on the accessibility alterations to the purported accessibility barriers in the Common Areas, *see* SECTIONS IV, B, with reasonable fees to be owed and paid directly by Defendants. Architect will submit monthly invoices for payment for services rendered to Defendants containing all documentation as required by Defendants.

12.      Plaintiff shall have equal access to, and may speak privately with, the Architect.

### B.      Modifications to Common Area

13.      Defendants agree to implement a plan to remove the purported accessibility barriers in the Common Area of the Multifamily Apartment Building in compliance with the Access Laws. The purported barriers in the Common Area to be removed and modified are identified in the chart annexed hereto as Exhibit 1.

14.      Within twenty (20) days following the Effective Date, Architect will provide plans and/or architectural drawings (the "Plans") for the Modifications to the Common Areas. Such Modifications shall be in compliance with the Plans and the requirements set forth in the Access Laws. Thirty (30) days thereafter, the implementation of the Modifications will commence.

15.      When implementation of the Modifications to the Common Areas is complete, Defendants will advise the Architect within five (5) business days of same. The Architect shall inspect the Modifications to ensure compliance with the Plans and Access Laws, and will report on its findings to the Parties within fourteen (14) days.

16.      If the Architect identifies any deviation with the Plans or Access Laws, Defendants agree to remedy same, with such remedial measures beginning within one (1) week of notification. Defendants will advise the Architect within five (5) business days of completing the remedial measures. Within ten (10) days, Architect shall re-inspect the Modifications to ensure compliance with the Plans and Access Laws, and will report on its findings to the Parties within fourteen (14)

4

days. If the Architect still identifies any deviation from the Plans or Access Laws, this process will repeat until the Architect confirms all Modifications to the Common Areas have been made in compliance with the Plans and Access Laws.

17.     Subject to the above, Parties pledge to use their reasonable best efforts to resolve any and all issues to enable the Modifications to the Common Areas to be completed within ninety (90) days of the Effective Date. If the Modifications required are not timely completed due to acts not under Defendants' control, Defendants shall be allowed reasonable additional time in which to complete the required Modifications and shall not be deemed to be in violation of the compliance dates contained herein as long as Defendants makes a good faith effort to effect implementation as soon as reasonably possible thereafter.  In such event, Defendants must notify Plaintiff's attorney in writing within seven (7) days of ascertaining the deadline of the need for additional time to complete the required Modifications.

**C.     Maintenance of Accessible Features**

18.     After completion of any and all work done in connection with accessible features at the Common Areas, Defendants shall maintain those accessible features in operable working condition in accordance applicable law.

**D.     Modifications to the Third-Floor Apartment**

19.     Defendants agree to permit Plaintiff to make the modifications to her Third-Floor Apartment identified in the chart and Scope of Work annexed hereto as Exhibit 2 (the "Apartment Modifications"), so long as such Modifications are performed by fully licensed and insured contractors identified to Defendants prior to the commencement of the Apartment Modifications.

20.     Defendants agree to waive any additional security deposit related to the Apartment Modifications. This does not waive Plaintiff's obligation to restore such Modifications consistent with the requirements of the Access Laws and agency/U.S. Department of Housing and Urban Development ("HUD") guidance regarding same. Plaintiff also agrees to complete the Modifications such that the Third-Floor Apartment is fully functional and not left in any state of disrepair, which would constitute a breach of this Agreement.

21.     Defendants are solely permitting Plaintiff to make the Apartment Modifications, but otherwise have no obligations with regard to same, including for any injuries or damages to any persons or premises resulting from or related to the Apartment Modifications. Nothing herein shall waive Defendants' duties and responsibilities under applicable laws, including the Multiple Dwelling Law, Multiple Residence Law, Housing Maintenance Code, and NYC Administrative Code.

22.     Plaintiff acknowledges that Thirty Thousand Dollars ($30,000) of the amount of the Payment for Damages (defined below) is being paid to enable Plaintiff to make the Modifications. Subject to the terms herein, Plaintiff agrees she will not have any right of recourse to seek additional monies from Defendants for purposes of making the Modifications.

## SECTION V
## FAIR HOUSING POLICIES AND TRAINING

23.     Defendants, their officers, employees, successors, and assigns agree to comply with the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, New York State Human Rights Laws, New York Executive Law § 296 *et seq.* and New York City Administrative Code § 8-107 *et seq.*

24.     The Pistilli Entity Defendants will adopt and implement a plan to engage in an interactive process, and make reasonable accommodations and modifications to their policies, practices, and procedures when necessary to make the Multifamily Apartment Building fully Accessible to individuals with disabilities as required by law.

25.     The Pistilli Entity Defendants agree to adopt a policy and procedure to handle a request for reasonable accommodations and reasonable modifications related to the Common Areas of the Multifamily Apartment Building.

26.     Pistilli    Defendants    will    adopt    a    reasonable    accommodation    policy ("Accommodation Policy") in either the form attached to this agreement as Exhibit 3 or a form containing materially the same terms as Exhibit 3, which outlines the practice for collecting, evaluating, and acting on requests for reasonable accommodations and modifications.

27.     The Pistilli Entity Defendants agree to provide annual disability sensitivity and fair housing training to each member of management and each employee or agent of the Multifamily Apartment Building. The training will cover at least the following topics: (i) the duty to comply with federal, state, and local fair housing laws; (ii) responsibilities related to requests for reasonable accommodations and modifications; (iii) the proper method of responding to such requests; and (iv) retaliation, interference and coercion in violation of the fair housing laws (the "Fair Housing Training"). The Fair Housing Training will be conducted by a competent third-party, selected and retained for such purposes by the Pistilli Defendants within ninety (90) days of the Effective Date. The identity of such third party shall be disclosed to the Plaintiff's counsel within ten (10) days of such selection. The Pistilli Entity Defendants will note attendance at each training session and maintain signed copies of an attendance record, which will contain the date and job title of each attendee during the term of this Settlement Agreement.

28.     The Pistilli Entity Defendants will designate an employee at the management level to serve as its "Compliance Officer" who will be responsible for ensuring that each new employee hired during the term of this Settlement Agreement with responsibilities to interact with tenants of the Multifamily Apartment Building, or who is involved in the management or rental of the Multifamily Apartment Building, shall receive the Fair Housing Training as described above. If the designated Compliance Officer leaves his/her employment with the Pistilli Entity Defendants, the Pistilli Entity Defendants will designate a new Compliance Officer within thirty (30) days. Within ninety (90) days of his/her designation, the new Compliance Officer will receive the Fair Housing Training as described above, to the extent said Compliance Officer has not received such Training previously.

6

## SECTION VI
## MONETARY RELIEF

29.    **Damages**. Concurrent with the execution of this Agreement, Defendants agree to pay Plaintiff the total sum of ONE HUNDRED AND FIVE THOUSAND DOLLARS ($105,000) as settlement of Plaintiff's claims in this Action ("Payment for Damages"). The Payment for Damages shall be made within ten (10) business days by delivering via certified mail, overnight mail or FEDEX mail to Plaintiff's attorneys, the law firm of James E. Bahamonde, P.C., Attn: James E. Bahamonde, Esq., 2501 Jody Court, North Bellmore, New York 11710, one (1) check made payable to "James Bahamonde as attorney for Lisa Rivera" to be held in escrow until the Settlement Agreement is So Ordered.   Plaintiff shall be responsible for paying any and all taxes associated with the Payment for Damages.

30.    **Attorneys' Fees and Costs**. As of the Effective Date, the Parties agree to confer in good faith as to the reasonable attorneys' fees and costs relating to the litigation to which Plaintiff's counsel will be reimbursed by Defendants. If agreement has not been reached within ninety (90) days of Plaintiff's counsel submitting the time records to support his claim for fees and costs to Defendants' counsel, Plaintiff's counsel can apply to the Court for a determination and award of reasonable attorneys' fees and costs pursuant to 42 § U.S.C. 3613, which Defendants may oppose.

31.    If the aforementioned Payment for Damages is not paid timely (including after providing Defendants with a reasonable time period and opportunity upon notice to cure said nonpayment), and in the amount agreed upon herein, then Plaintiff can use all legal avenues to enforce this Agreement, with all attorney's fees, costs, collection fees and expenses incurred by the Plaintiff and/or Plaintiff's counsel to be fully reimbursed by the Defendants jointly and severally. In addition, Plaintiff's counsel shall be entitled to a judgment against Defendants for the total amount together with all attorney's fees, collection costs, and other expenses incurred in enforcing this agreement, less all payments made hereunder.

## SECTION VII
## DISMISSAL AND CONTINUING JURISDICTION

32.    Concurrent with the execution of this Settlement Agreement, Defendants will deliver to the law firm of James E. Bahamonde, PC, as counsel for Plaintiff, a signed Stipulation and Order of Dismissal (as prepared by Plaintiff's counsel and approved by Defendants' counsel). The Stipulation of Dismissal shall be with prejudice, subject to the District Court's retention of jurisdiction to enforce the terms of this Settlement Agreement and for determination and award of reasonable attorneys' fees and costs, if necessary. Counsel for Plaintiff will file the executed Stipulation and Order of Dismissal with the Court to dismiss the case with prejudice within ten (10) days after the Defendants have made the Payment for Damages and attorney's fees and costs.

## SECTION VIII
## DISPUTE RESOLUTION

33.    The Parties to this Agreement will endeavor in good faith to informally resolve any differences regarding compliance and interpretation of this Agreement. Plaintiff will give Defendants written notice of any instance of alleged noncompliance with this Agreement and

7

provide Defendants with an opportunity to cure any alleged noncompliance. The Parties agree to confer within fourteen (14) days of the written notice to discuss a reasonable resolution of the allegation(s) and a timetable to implement the reasonable resolution. Plaintiff's allegations of noncompliance must be made in good faith or Plaintiff is responsible to pay Defendants' attorney's fees and costs for conferring.

34.     If the dispute is not resolved after forty-five (45) days of meet and confer efforts between Parties, any Party may file a motion with the Court to enforce the Settlement. Attorneys' fees and costs in connection with any motion to enforce the terms of the Settlement may be claimed in accordance with applicable law.

35.     The Agreement shall, for all purposes, be governed by, construed, and enforced in accordance with federal law.

## SECTION IX
## CONSTRUCTION AND SEVERABILITY

36.     This Agreement will be deemed to have been jointly drafted, and no provision herein will be interpreted or construed for or against any Party because such Party drafted or requested such provision or this Agreement as a whole.

37.     If any provision in this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement will endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision will materially affect the intent of the Agreement. The Parties to this Agreement will consult and use their best efforts to agree upon a valid and enforceable provision that will be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

38.     This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter herein will be deemed to exist, to bind the Parties hereto, or to vary the terms and conditions contained herein.

39.     The Parties to this Agreement expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys, and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

## SECTION X
## CONFIDENTIALITY

40.     The Parties understand that the Settlement Agreement shall be filed via ECF so that the Court may approve and enforce the Agreement. Aside from the ECF filing, the Parties shall, and hereby direct their respective counsel to, maintain and hold all of the provisions and terms of this Agreement in STRICT CONFIDENCE, and further agree and direct that no copy of this Agreement nor any settlement terms contained herein shall be disclosed to, and/or discussed with, any individuals or entities except as follows: (i) should a similar lawsuit alleging allegations of

violations of the FHA, NYCHRL, NYSHRL concerning accessibility be filed concerning the Multifamily Apartment Building, Defendants may use this Agreement in the lawsuit for their defense, provided, however, that the Payment for Damages (defined above) is redacted prior to any such disclosure; (ii) in any legal action necessary to enforce or effectuate the terms of this Agreement, including subject to any court order requiring disclosure of same; and (iii) subject to court order, subpoena or other validly issued administrative or judicial process requesting the Settlement Agreement.

**SECTION XI**
**RELEASE**

41.     In exchange for Defendants' agreement to the terms set forth in this Settlement Agreement and payment of the monetary relief described herein, Plaintiff fully and forever releases, acquits, and forever discharges with prejudice, subject to the terms of this Settlement Agreement, Defendants and all their principals, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys, and insurers from any and all liability, claims, or rights of action or recourse, of any kind or nature whatsoever, arising from the allegations set forth or described in the Complaint in this action (or which could have been raised), whether known or unknown, existing from the beginning of the world until the date of this Agreement – including any claims or allegations related to or brought pursuant to the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; the New York State Human Rights Law, New York Executive Law § 296 *et seq.*; the New York City Human Rights Law, New York Administrative Code § 8-107 *et seq.* (hereinafter, the "Plaintiff's Released Claims") – provided however, that the Plaintiff's Released Claims will not include any claims to enforce any provision of this Agreement and will not preclude Plaintiff from moving for attorney's fees or costs as set forth in Section VI. The release to each Defendant is an individual release. No breach of this Settlement Agreement by a particular Defendant will have any impact on the release or obligations of any of the other Defendants, or their principals, employees, agents, representatives, officers, heirs, assigns, subsidiaries, successors in interest, attorneys, or insurers.

**SECTION XII**
**COMMUNICATIONS TO PLAINTIFF AND DEFENDANTS.**

42.     Unless otherwise indicated in the Agreement, all notices or communications required by this Agreement shall be in writing by email and certified mail addressed as follows, unless counsel for any Party notifies counsel for any other Party in writing of any change:

  a.   To Plaintiff's Counsel:

    Law Offices of James E. Bahamonde, PC
    2501 Jody Ct.
    North Bellmore, NY 11710
    james@civilrightsny.com

  b.   To Defendants' Counsel:

9

Meltzer, Lippe, Goldstein & Breitstone, LLP
Attn: Jonathan D. Farrell, Esq.
190 Willis Ave
Mineola, NY 11501
jfarrell@meltzerlippe.com

## SECTION XIII
## EXECUTION IN COUNTERPARTS

43.    This Settlement Agreement can be executed in counterparts, all of which shall be taken to be one and the same instrument, for the same effect as if all Parties hereto had signed the same signature page. A facsimile copy of any Party's signature shall be deemed as legally binding as the original signatures.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

Agreed to as of the Effective Date by the undersigned Parties:

|  | 170 Kingsbridge Pistilli LLC |
|---|---|
| By: Lisa Rivera | By: Joseph Pistilli |
|  | Title: Authorized Representative |
| Date: November __, 2021 | Date: November __ 2021 |
|  | Pistilli Realty Group |
|  | By: Joseph Pistilli |
|  | Title: Chairman and Chief Executive Officer |
|  | Date: November __, 2021 |
|  | By: Anthony Pistilli |
|  | Date: November __, 2021 |

It is so ORDERED this _5_ day of _January_ _2022_, 2021.

Hon. John G. Koeltl
United States District Judge

11

Agreed to as of the Effective Date by the undersigned Parties:

| | |
|---|---|
| *Lisa R.*<br><br>By: Lisa Rivera<br>November 15, 2021<br>Date: ~~October 17, 2021~~ | 170 Kingsbridge Pistilli LLC<br><br>By: Joseph Pistilli<br>Title: Authorized Representative<br><br>Date: October __ 2021 |
| | Pistilli Realty Group<br><br>By: Joseph Pistilli<br>Title: Chairman and Chief Executive Officer<br><br>Date: October __, 2021 |
| | By: Anthony Pistilli<br><br>Date: October __, 2021 |

It is so ORDERED this _____ day of _____, 2021.

_____

HON. JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

11

Agreed to as of the Effective Date by the undersigned Parties:

| | 170 Kingsbridge Pistilli LLC |
|---|---|
| By: Lisa Rivera<br><br>Date: November _, 2021 | By: Joseph Pistilli<br>Title: Authorized Representative<br><br>Date: November _ 2021 |
| | Pistilli Realty Group<br><br><br>By: Joseph Pistilli<br>Title: Chairman and Chief Executive Officer<br><br><br>Date: November _, 2021 |
| | By: Anthony Pistilli<br><br>Date: November 18 2021 |

It is so ORDERED this _____ day of _____, 2021.


_____

HON. JOHN G. KOELTL
UNITED STATES DISTRICT JUDGE

11

EXHIBIT 1

---

### REMEDIATION TO COMMON AREA OF MULTIFAMILY APARTMENT BUILDING

1.  MODIFY PATH TO TRAVEL ABUTTING MAIN ENTRANCE AND MULTIFAMILY APARTMENT BUILDING TO ENSURE NO IMPEDIMENTS TO ACCESS FOR A PERSON SEATED IN A WHEELCHAIR

2.  REMOVE ANY EXISTING STEP AT ENTRANCE TO MULTIFAMILY APARTMENT BUILDING

3.  MODIFY FRONT ENTRANCE DOOR TO MAKE IT EASIER FOR MS. RIVERA TO OPEN BECAUSE, PRESENTLY, IT IS TOO HEAVY, AS CONSISTENT WITH MAINTAINING THE SAFETY OF OTHER RESIDENTS OF THE MULTIFAMILY APARTMENT BUILDING

4.  MODIFY CLOSING SPEED OF MAIN ENTRANCE DOOR TO A LONGER DURATION, AS CONSISTENT WITH MAINTAINING THE SAFETY OF OTHER RESIDENTS OF THE MULTIFAMILY APARTMENT BUILDING

5.  LOWER HEIGHT OF ELEVATOR CALL BUTTON IN LOBBY AND EACH FLOOR TO MAKE IT ACCESSIBLE TO A PERSON SEATED IN A WHEELCHAIR

6.  REPAIR AND LOWER ANY EXISTING INTERCOM/BUZZER LOCATED AT THE BUILDING'S ENTRANCE TO ENSURE IT IS OPERATBLE AND IS LOCATED AT AN ACCESSIBLE HEIGHT TO A PERSON SEATED IN A WHEELCHAIR

7.  MODIFY ANY EXISTING SENSOR AT ENTRANCE DOOR TO ENSURE IT DETECTS THE PRESENCE OF A PERSON SEATED IN A WHEELCHAIR

---

**EXHIBIT 2**

**GENERAL SCOPE OF WORK AND ACCESSIBILITY ALTERATIONS TO THIRD-FLOOR APARTMENT**

| Location | Retrofits |
|---|---|
| **ENTRANCE DOOR** | P/I 32" APT ENTRANCE DOOR COMPLETE WITH ADA APPROVED LOCKSET AND PEEP HOLE. NOTE: HEIGHT OF PEEP HOLE TO BE DETERMINED BY PLAINTIFF. |
| **BATHROOM** | P/I 32" SOLID CORE BATHROOM DOOR COMPLETE WITH ADA APPROVED LOCKSET |
| | DEMO BATH WALLS AND CEILING TO STUDS |
| | P/I WALK IN TUB WITH A 4″ OR LESS THRESHOLD ENTRY 60" X 30" WITH THREE PIECE WALL SURROUND AND DECK EXTENSION COMPLETE WITH HAND SHOWER ROMAN TUB FILLER, THERMOSTATIC MIXING VALVE. |
| | P/I WASTE LINE AND SUPPLY LINES TO ALL FIXTURES TO INCLUDE SHUTOFF VALVES |
| | REMOVE FLOOR TILE AND INSTALL SLIP RESISTANT FLOOR TILE, APPROXIMATELY 20 S.F. |
| | P/I CONCRETE BACKER BOARD TO BATHROOM WALLS APPROXIMATELY 97 S.F. AND WALL TILES TO ALL WALLS APPROXIMATELY 97 S. F. |
| | P/I MOISTURE RESISTANT SHEET ROCK TO CEILING APPROXIMATELY 35 S.F. |

13

| | |
|---|---|
| **PLYWOOD REINFORCEMENTS IN BATHROOM WALLS** | INSTALL PLYWOOD REINFORCEMENT PLATES FOR NEW LAVATORY, TOILET AND ALL BATHROOM ACCESSORIES |
| **BATHROOM** | P/I FIVE PIECE BATHROOM ACCESSORY SET. |
| **WATER CLOSET** | AMERICAN STANDARD Cadet Pressure-Assisted 2-Piece 1.6 GPF Single Flush Elongated Toilet <u>15" HIGH</u> AND SEAT COLOR WHITE OR SIMILAR |
| **LAVATORY** | P/I NEW LAVATORY AND  BASE CABINET UNDER SINK |
| **BATHROOM SINK AND FAUCET** | P/I 20"x 18" WALL MOUNTED ENAMELED CAST IRON SINK, 4" CENTER WITH WALL HANGER OR SIMILAR. FAUCET TO BE DELTA SINGLE LEVER, MODEL# 520-WFMPU, 4" CENTER-SET, METAL POP-UP CHROME FINISH OR SIMILAR |
| **MEDICINE CABINET** | P/I NEW MEDICINE CABINET SURFACE MOUNTED 22"x16" STEEL CONSTRUCTION WITH BAKED ENAMEL FINISH WITH TWO ADJUSTABLE SHELVES, MODEL# 9664 BY BRADLEY CORP OR SIMILAR; HEIGHT AND POSITION TO BE DETERMINED BY PLAINTIFF |
| **BATHROOM LIGHT FIXTURES** | P/I TWO MOISTURE RESISTANT LIGHT FIXTURES ONE OVER THE TUB AREA AND ONE OVER THE MEDICINE CABINET |
| **GFCI OUTLET** | P/I GFCI OUTLET NEAR LAVATORY; HEIGHT AND POSITION TO BE DETERMINED BY PLAINTIFF |
| **BATHROOM LIGHT SWITCH** | REINSTALL LIGHT SWITCH; HEIGHT TO BE DETERMINED BY PLAINTIFF |

14

| GRAB BARS | REINSTALL GRAB BARS; HEIGHT AND POSITION DETERMINED BY PLAINTIFF |
|---|---|
| FLOORS | LEVEL EXISTING FLOORS IN APARTMENT TO HAVE A SLOPE NOT STEEPER THAN 1:48, AND CONSISTENT WITH ANSI A117.1 SECTIONS 302 – 305 |
| | P/I ARMSTRONG LINOLEUM SHEET FLOORING AND SEPARATE UNDERLAYMENT. THE ARMSTRONG DESIGN TO BE DETERMINED BY PLAINTIFF |
| PLAINTIFF'S BEDROOM | P/I 32" SOLID CORE BEDROOM DOOR WITH ADA APPROVED LOCKSET |
| PLAINTIFF'S BEDROOM CLOSET | P/I CLOSET POLE IN CLOSET |
| | REMOVE SADDLE AT LEFT SIDE OF CLOSET |
| WINDOWS | ADJUST TENSION ON ALL WINDOW SPRINGS SO THAT ALL THE WINDOWS CAN BE OPENED BY PLAINTIFF |
| KITCHEN | ACCESSIBILITY MODIFICATIONS TO KITCHEN CABINETS AND SINK FAUCET |

## EXHIBIT 3
## REASONABLE ACCOMMODATION OR MODIFICATION POLICY
## AND REQUEST FORM

Pistilli Realty Group is committed to providing equal housing opportunity at the apartment building located at 170 W. Kingsbridge Road, Bronx, NY. As part of this commitment, we will engage in an interactive process with respect to requests to grant reasonable accommodations to modify our rules, policies, practices, and services to meet the needs of individuals with disabilities, as consistent with existing legal requirements. We will also engage in an interactive process with respect to requests to permit reasonable modifications of our physical premises to meet the needs of individuals with disabilities, as consistent with existing legal requirements.

It is our policy to reject reasonable accommodation or modification requests when they are not required by and/or consistent with existing law. In such case, we will discuss reasonable alternatives consistent with existing law that may meet the requesting individual's needs.

### *Procedure for Making a Request*

Requests for reasonable accommodations or modifications must be submitted in writing, preferably through the attached form, although we will consider requests made via an alternative written medium. Please include any additional information that you believe would be useful in assisting us to evaluate the request.

### *Verification and Documentation*

Under the circumstances where your disability is not obvious, we may request that you provide verification that you have a disability-related need for the requested reasonable accommodation or modification.

### *Providing Disability-Related Accommodations*

We will discuss your request with you. If the request is approved, we will provide a letter explaining how and when the accommodation or modification can be provided. If a request cannot be approved because it is not required and/or consistent with existing law, then we will discuss alternative accommodations or modifications that may address your disability-related need (assuming you are considered disabled under the law). If no alternative meets your disability-related the needs, or if you and Pistilli Realty Group cannot agree on a reasonable alternative, we will notify you of the denial in writing in a reasonable amount of time and will provide an opportunity for you to revise your request.

16

**Reasonable Accommodation or Modification Request**

Name: _____

Address: _____

Phone: _____

I am making this request on behalf of:_____
                                                                  (Name of Person with Disability)

Please describe the reasonable accommodation or modification you are requesting and the disability-related reason for your request:

_____

_____

_____

_____

Date: _____      Signature: _____

This form, along with any additional information, should be submitted to:

*[INSERT ADDRESS]*

If you have any questions, please contact _____ at _____

**For Office Use Only**

[ ]    Approved      Reason:_____

[ ]    Denied          _____

                          _____

17

## WORK AUTHORIZATION

170 Kingsbridge Pistilli LLC authorizes Lisa Rivera to make the following accessibility modifications to her apartment located at 170 West Kingsbridge Road, Apartment 3B, Bronx New York, so long as such modifications are performed by fully licensed and insured contractors identified to 170 Kingsbridge Pistilli LLC prior to the commencement of the modifications.

### GENERAL SCOPE OF WORK AND ACCESSIBILITY
### ALTERATIONS TO THIRD-FLOOR APARTMENT

| LOCATION | RETROFITS |
|---|---|
| ENTRANCE DOOR | P/I 32" APT ENTRANCE DOOR COMPLETE WITH ADA APPROVED LOCKSET AND PEEP HOLE. NOTE: HEIGHT OF PEEP HOLE TO BE DETERMINED BY PLAINTIFF. |
| BATHROOM | P/I 32" SOLID CORE BATHROOM DOOR COMPLETE WITH ADA APPROVED LOCKSET |
| | DEMO BATH WALLS AND CEILING TO STUDS |
| | P/I WALK IN TUB WITH A 4" OR LESS THRESHOLD ENTRY 60" X 30" WITH THREE PIECE WALL SURROUND AND DECK EXTENSION COMPLETE WITH HAND SHOWER ROMAN TUB FILLER, THERMOSTATIC MIXING VALVE. |
| | P/I WASTE LINE AND SUPPLY LINES TO ALL FIXTURES TO INCLUDE SHUTOFF VALVES |
| | REMOVE FLOOR TILE AND INSTALL SLIP RESISTANT FLOOR TILE, APPROXIMATELY 20 S.F. |
| | P/I CONCRETE BACKER BOARD TO BATHROOM WALLS APPROXIMATELY 97 S.F. AND WALL TILES TO ALL WALLS APPROXIMATELY 97 S. F. |

18

|  | P/I MOISTURE RESISTANT SHEET ROCK TO CEILING APPROXIMATELY 35 S.F. |
| --- | --- |
| **PLYWOOD REINFORCEMENTS IN BATHROOM WALLS** | INSTALL PLYWOOD REINFORCEMENT PLATES FOR NEW LAVATORY, TOILET AND ALL BATHROOM ACCESSORIES |
| **BATHROOM** | P/I FIVE PIECE BATHROOM ACCESSORY SET. |
| **WATER CLOSET** | AMERICAN STANDARD Cadet Pressure-Assisted 2-Piece 1.6 GPF Single Flush Elongated Toilet 15" HIGH AND SEAT COLOR WHITE OR SIMILAR |
| **LAVATORY** | P/I NEW LAVATORY AND  BASE CABINET UNDER SINK |
| **BATHROOM SINK AND FAUCET** | P/I 20"x 18" WALL MOUNTED ENAMELED CAST IRON SINK, 4" CENTER WITH WALL HANGER OR SIMILAR. FAUCET TO BE DELTA SINGLE LEVER, MODEL# 520-WFMPU, 4" CENTER-SET, METAL POP-UP CHROME FINISH OR SIMILAR |
| **MEDICINE CABINET** | P/I NEW MEDICINE CABINET SURFACE MOUNTED 22"x16" STEEL CONSTRUCTION WITH BAKED ENAMEL FINISH WITH TWO ADJUSTABLE SHELVES, MODEL# 9664 BY BRADLEY CORP OR SIMILAR; HEIGHT AND POSITION TO BE DETERMINED BY PLAINTIFF |
| **BATHROOM LIGHT FIXTURES** | P/I TWO MOISTURE RESISTANT LIGHT FIXTURES ONE OVER THE TUB AREA AND ONE OVER THE MEDICINE CABINET |
| **GFCI OUTLET** | P/I GFCI OUTLET NEAR LAVATORY; HEIGHT AND POSITION TO BE DETERMINED BY PLAINTIFF |
| **BATHROOM LIGHT SWITCH** | REINSTALL LIGHT SWITCH; HEIGHT TO BE DETERMINED BY PLAINTIFF |

| GRAB BARS | REINSTALL GRAB BARS; HEIGHT AND POSITION DETERMINED BY PLAINTIFF |
|---|---|
| FLOORS | LEVEL EXISTING FLOORS IN APARTMENT TO HAVE A SLOPE NOT STEEPER THAN 1:48, AND CONSISTENT WITH ANSI A117.1 SECTIONS 302 – 305 |
| | P/I ARMSTRONG LINOLEUM SHEET FLOORING AND SEPARATE UNDERLAYMENT. THE ARMSTRONG DESIGN TO BE DETERMINED BY PLAINTIFF |
| PLAINTIFF'S BEDROOM | P/I 32" SOLID CORE BEDROOM DOOR WITH ADA APPROVED LOCKSET |
| PLAINTIFF'S BEDROOM CLOSET | P/I CLOSET POLE IN CLOSET |
| | REMOVE SADDLE AT LEFT SIDE OF CLOSET |
| WINDOWS | ADJUST TENSION ON ALL WINDOW SPRINGS SO THAT ALL THE WINDOWS CAN BE OPENED BY PLAINTIFF |
| KITCHEN | ACCESSIBILITY MODIFICATIONS TO KITCHEN CABINETS AND SINK FAUCET |

170 Kingsbridge Pistilli LLC

By: Joseph Pistilli
Title: Authorized Representative

Date:

20